UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**MARGARET MICHELLE DRIVER**                                            **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 5:17CV-175-TBR**

**CALDWELL COUNTY JAIL** *et al.*                                           **DEFENDANTS**

## **MEMORANDUM OPINION**

This matter is before the Court on initial review of Plaintiff Margaret Michelle Driver's *pro se*, *in forma pauperis* amended complaint (DN 6) pursuant to 28 U.S.C. § 1915(e)(2). For the reasons that follow, the action will be dismissed.

**I.**

In the amended complaint, Plaintiff sues Caldwell County Jail (CCJ) and Jailer Jon Pettit in his individual and official capacities. She alleges "cruel and unusual punishments" during her detention in CCJ from November 28 to 29, 2016. She claims, "I was put in Jail on a false arrest I was suffering from a combative head injury." She further claims:

> I dont know for sure what all happened because they refused to give me the video but Jon Pettit and I spoke severl times on the phone and he apoligized and said I should have never been brought to jail and said he viewed the tape and at one point I fell off the bunk. the next morning when my brain was coming back to normal I noticed I had no socks or shoes on I was in major pain an vomiting the cell had food that was thrown by another inmate that was in there befor me all over the floor walls tolit and sick also mold and what smelt like urine and I had no tolit tissue or handsoap and had to continuly beg to get them and the tolit did not flush right it was starting to overflow they kept me in that cell till I was released on bond the next morning. this Jail in the shape it is an has been for years should be shut down but they continue to pass inspections they get told ahead of time I know for a fact they use an electric heater in the main cell to help keep the cell warm so they put it away until the inspector leaves.

Plaintiff also alleges that Defendant Pettit "failed to properly train his employees and allowed them to treat inmates as they wanted an not by the rules and laws. [CCJ] continues to have inmates in a jail that is an has been for years in deplorable condition."

As her injuries, Plaintiff states as follows:

> mental abuse made me feel like I wasn't a person but an animal being abused. I dont know if falling off bunk caused more injuries or what all I went through because I was suffering from a head injury at this time and John Pettit apologized more than once to me on the phone for how the cell was that they put me in and said he knew I should have never been put in Jail because I was not drunk but suffering from a combative head injury but yet they left me in there instead of seeking me medical help somewhere else other than Caldwell Co. hospital who failed to treat me and had me arrested for disorderly conduct because they Just thought I was drunk when in fact I was not and they Just threw me in Jail. by the grace of GOD I did not die[.]

As relief, Plaintiff seeks punitive damages; wants "[CCJ] to build a new jail that is fit to house inmates and make sure all employees are trained and follow rules an laws"; and wants Defendant Pettit "to as a Jailer make sure his deputies are trained and follow rules an laws on how they are trained to treat inmates and stop hiding and covering up things that need to be changed in that Jail."

## II.

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the amended complaint under 28 U.S.C. § 1915(e). On review, a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

**III.**

*A. CCJ and Defendant Pettit in his official capacity*

The CCJ is not an entity subject to suit under § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Rather, the claims against the CCJ are against Caldwell County as the real party in interest. *Id.* ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."); *Fambrough v. Vaught*, 4:06CV-P130-M, 2007 WL 891866, at *1 (W.D. Ky. Mar. 21, 2007) ("[T]he claims against the detention center are . . . against [the County] as the real party in interest.").

As to Plaintiff's official-capacity claims against Defendant Pettit, "[o]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against Defendant Pettit, therefore, are also against Caldwell County. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he

touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

None of the allegations in the complaint indicate that any alleged wrongdoing or injury occurred as a result of a policy or custom implemented or endorsed by Caldwell County. *Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As to Plaintiff's claim that CCJ deputies are not "properly trained," she does not specify in what area/subject they lack training, and this broad and conclusory allegation about the lack of specific training fails to demonstrate liability on the part of either Caldwell County or Defendant Pettit. Accordingly, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim. Therefore, the § 1983 claims against CCJ and Defendant Pettit in his official capacity will be dismissed.

### B. Defendant Pettit in his individual capacity

Plaintiff alleges "cruel and unusual punishments." Because Plaintiff was a pretrial detainee and not a convicted prisoner during her detention at CCJ, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to her. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). However, "[t]he Due Process Clause of the Fourteenth Amendment extends the protection of the Eighth Amendment to pretrial detainees such as Plaintiff." *Harrell v. Grainger Cty., Tenn.*, 391 F. App'x 519, 522 (6th Cir. 2010). Plaintiff's conditions-of-confinement claims, therefore, will proceed under the Fourteenth Amendment, but will be analyzed like Eighth Amendment claims. *See Bass v. Strode*, No. 1:12CV-P182-R, 2012 WL 5834123, at *2 (W.D. Ky. Nov. 16, 2012).

"[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

"'The circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred.'" *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). Here, Plaintiff's alleged conditions—vomit, food, mold, urine odor, no tissue or hand soap, problems

6

with toilet—were of such a short duration (at most two days) that they did not amount to an Eighth/Fourteenth Amendment violation.[1]

As to Plaintiff's mention of a "combative head injury," she alleges that she sustained that injury prior to her entry into CCJ and after she already had been at Caldwell County Hospital and then arrested by police who transported her to CCJ. While Plaintiff alleges having fallen from a bunk during the night, this allegation demonstrates at most negligence and did not involve Defendant Pettit. *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Loy v.*

---

[1] *See, e.g.*, *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (finding no Eighth Amendment violation where inmate alleged "no toilet paper, soap, toothpaste, toothbrush, running water, or the ability to shower for six days while on Behavioral Management"); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) ("With respect to Plaintiff's conditions of confinement claims – that he was deprived of a lower bunk, was subjected to a flooded cell, and was deprived of a working toilet – Plaintiff alleged only temporary inconveniences and did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."); *Abdur-Reheem-X v. McGinnis*, No. 99-1075, 1999 WL 1045069, at *1 (6th Cir. Nov. 12, 1999) ("[T]he Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets."); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (holding that as a matter of law defendants did not violate inmate's Eighth Amendment rights by depriving him of a mattress for a two-week period); *see also Quarles v. Boyd*, No. 5:18-CV-P7-TBR, 2018 WL 2293957, at *2 (W.D. Ky. May 18, 2018) ("Plaintiff does not allege that he suffered any injury as a result of the mold. Without alleging an injury, Plaintiff has not stated a claim under the Eighth Amendment."); *Klotz v. Ingham Cty. Jail*, No. 1:17-CV-608, 2017 WL 4173508, at *4 (W.D. Mich. Sept. 21, 2017) ("Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."); *Jackson v. Ingham Cty. Jail*, No. 1:17-CV-237, 2017 WL 2927484, at *5 (W.D. Mich. July 10, 2017) ("A prisoner's exposure to the smell of feces is not sufficient to state an Eighth Amendment claim."); *Wiley v. Ky. Dep't of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at *4 (E.D. Ky. Nov. 21, 2012) (holding an inmate's placement in a "dry cell" with no running water failed to state a constitutional claim because the discomforts the inmate experienced lasted for only 14 days); *Glover v. Grant Cty. Det. Ctr.*, No. 10-00088-DLB, 2010 WL 2804054, at *4 (E.D. Ky. July 15, 2010) ("[T]hese short durations of cold conditions [between February 2-5, 2010 and "for 2½ days later that month"] fail to amount to a serious deprivation of the minimal civilized measure of life's necessities."); *Clark v. Spey*, No. 01-C-9669, 2002 WL 31133198 (N.D. Ill. Sept. 26, 2002) (finding inmate held overnight in cold cell with no toilet did not state a claim); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation.").

*Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) ("In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

The circumstances surrounding Plaintiff's incarceration may have been uncomfortable and unfortunate, but Plaintiff has not alleged facts rising to the level of a constitutional magnitude. For these reasons, the Court will dismiss this action by separate Order.

Date:


cc:      Plaintiff, *pro se*
           Defendants
           Caldwell County Attorney
4413.005